ROY C. HYMAN, ON BEHALF OF HIMSELF AND ALL OTHER SIMILARLY SITUATED PERSONS,
PLAINTIFF v. EFFICIENCY, INC., D/B/A TROJAN LABOR, DEFENDANT

No. COA04-246

(Filed 7 December 2004)

## 1. Employer and Employee— wage withholding—transportation deduction—specific authorization

A de novo review revealed that the trial court did not err by granting summary judgment in favor of defendant temporary employment agency after the trial court found no violations of the North Carolina Wage and Hour Act under N.C.G.S. § 95-25.8 and N.C. Admin. Code tit. 13, r. 12.0305 based on defendant withholding class members' wages to pay for an optional transportation service to and from job sites, because: (1) defendant's daily log complies with the requirements of N.C.G.S. § 95-25.8(2)(a) as a specific authorization since the log provides class members with advance notice of the specific deduction amount, and the deductions for transportation expenses are not automatic and are conditioned upon the class members specifically requesting use of the van pool each morning; (2) defendant's daily log specific authorization form satisfied the formatting and content requirements under N.C. Admin. Code tit. 13, r. 12.0305(b) since the daily log is written, signed by the class members on or before the payday for the pay period for which the deduction is made, includes the date signed, and states the reason for the deduction; (3) while administrative opinion letters from the North Carolina Department of Labor are not binding on the Court of Appeals, they are recognized as evidence of defendant's good faith to comply with the statute; and (4) the optional transportation service offered to the class members is neither an incident of nor necessary to the employment, and it is not primarily for the benefit of defendant who hired from its locale even though the trip the class members pay for is between defendant's home office and the job sites.

## 2. Employer and Employee— wage withholding—waiting and traveling to work

A de novo review revealed that the trial court did not err by granting summary judgment in favor of defendant temporary employment agency based on class members not being entitled to compensation under N.C.G.S. § 95-25.6 for time spent waiting for·

**HYMAN v. EFFICIENCY, INC.**

[167 N.C. App. 134 (2004)]

and traveling on defendant's optional transportation service, because: (1) plaintiff testified that defendant never told him that hours worked included wait time or travel time to and from the job site, and the employment contract does not provide for the compensation the class members seek; (2) the class members' wait or travel time is not a principal activity requiring compensation, but instead is preliminary and postliminary activity since the class members' idle time either before or after the workday is personal; and (3) the receipt of general protective equipment does not make travel time compensable under 29 C.F.R. § 785.38.

Appeal by plaintiff from order entered 21 November 2003 by Judge Donald W. Stephens in Wake County Superior Court. Heard in the Court of Appeals 14 October 2004.

*Law Offices of Robert J. Willis, by Robert J. Willis, for plaintiff-appellant.*

*Cranfill, Sumner & Hartzog, L.L.P., by M. Robin Davis and Alycia S. Levy, for defendant-appellee.*

TYSON, Judge.

Roy C. Hyman ("plaintiff"), on behalf of those similarly situated (collectively, "the class members") appeal entry of summary judgment in favor of Efficiency, Inc., d/b/a Trojan Labor ("defendant") after the trial court found no violations of the North Carolina Wage and Hour Act ("the NCWHA"), N.C. Gen. Stat. § 95-25.1 *et seq.* We affirm.

## I. Background

Defendant is a temporary employment agency that hires individuals on a daily basis for casual labor. Defendant markets and provides the temporary labor to businesses that periodically need additional workers.

Defendant's hiring policy is structured on a first come first serve basis. The class members arrive at defendant's office early in the morning to receive available employment. Upon arrival, the class members receive a time ticket indicating their place in line for job assignments. The time between receiving a number in line and departure to job sites is considered unpaid personal time.

After receiving assignments, the class members may either transport themselves to the job sites or participate in defendant's van pool.

HYMAN v. EFFICIENCY, INC.

[167 N.C. App. 134 (2004)]

Defendant deducts $2.00 each way from a participant's paycheck for optional van transportation. With their initial employment application, all the class members sign authorization forms that disclose the optional transportation program and related expenses. Each morning, the class members interested in using the van pool sign an additional form authorizing a wage deduction from their paycheck. The class members are not paid while waiting for the van pool at either defendant's office or for return from the job site.

Plaintiff filed a complaint in state court on 26 April 2002. Defendant removed the case to federal court alleging federal question subject matter jurisdiction under the Federal Fair Labor Standards Act ("the FLSA"), 29 U.S.C. § 201 et seq. On 25 September 2002, the federal court granted plaintiff's motion to remand to state court as the claims were based solely under substantive state law.

On 24 February 2003, the trial court granted plaintiff's uncontested motion to file an amended complaint. This complaint alleged two class action claims under the NCWHA. First, plaintiff alleged defendant withheld illegal wage deductions. Second, defendant failed to honor an express agreement to pay plaintiff for all daily wages due. On 11 April 2003 and 3 June 2003, plaintiff moved for and was granted class certification of two classes of plaintiffs: (1) the transportation deduction class; and (2) the waiting to work class. Defendant answered on 16 June 2003.

Defendant moved for summary judgment, or in the alternative for partial summary judgment, on 28 August 2003. The motion alleged: (1) plaintiff failed to state a claim upon which relief could be granted under the NCWHA and N.C. Gen. Stat. § 95-25.1 et seq.; (2) plaintiff's claims under the NCWHA and N.C. Gen. Stat. § 95-25.1 et seq. are preempted by the FLSA; (3) plaintiff was paid the agreed upon wage for "hours worked" under the FLSA; and (4) defendant's wage deduction authorization forms fully complied with the NCWHA, specifically N.C. Gen. Stat. § 95-28.8(2).

On 21 November 2003, the trial court found the "material facts regarding these claims are not in significant dispute [and] [t]he issue . . . is whether or not the undisputed material facts of record establish a violation of the Wage and Hour Act." The trial court found plaintiff failed to show a violation of the NCWHA and granted defendant's motion for summary judgment. Plaintiff appeals.

HYMAN v. EFFICIENCY, INC.

[167 N.C. App. 134 (2004)]

## II. Issues

The issues on appeal are whether the trial court properly granted: (1) summary judgment in favor of defendant on plaintiff's transportation deduction claim; and (2) summary judgment in favor of defendant on plaintiff's waiting to work claim.

## III. Federal Statutes, Regulations, and Cases as Guidance

The issues before us arise from Employment and Labor Law, an area substantively monopolized by federal law. Plaintiff's claims are based on the NCWHA, N.C. Gen. Stat. § 95-25.1 *et. seq.* The NCWHA is modeled after the FLSA. *Laborers' Int'l Union of North America, AFL-CIO v. Case Farms, Inc.*, 127 N.C. App. 312, 314, 488 S.E.2d 632, 634 (1997). The North Carolina Administrative Code ("the Code") provides that "judicial and administrative interpretations and rulings established under [] federal law" may guide us when interpreting North Carolina laws that are identical to provisions of the FLSA. N.C. Admin. Code tit. 13, r. 12.0103 (June 2004).

We are not bound by decisions of Federal circuit courts other than those of the United States Court of Appeals for the Fourth Circuit arising from North Carolina law. *Haynes v. State*, 16 N.C. App. 407, 409-10, 192 S.E.2d 95, 97 (1972) (citing *State v. Barber*, 278 N.C. 268, 179 S.E.2d 404 (1971)).

## IV. Standard of Review

We review a trial court's entry of summary judgment *de novo*. *Shroyer v. County of Mecklenburg*, 154 N.C. App. 163, 167, 571 S.E.2d 849, 851 (2002) (citing *Falk Integrated Tech., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999)). Under *de novo* review, a reviewing court considers the matter anew, and it may substitute its own judgment for that of the trial court. *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (citation omitted).

Summary judgment is proper when: "(1) the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact; and (2) the moving party is entitled to judgment as a matter of law." *Von Viczay v. Thoms*, 140 N.C. App. 737, 738, 538 S.E.2d 629, 630 (2000) (quotation omitted), *aff'd per curiam*, 353 N.C. 445, 545 S.E.2d 210 (2001). The moving party has the burden of showing there is no genuine issue of material fact and that it is entitled to

judgment as a matter of law. *Garner v. Rentenbach Constructors, Inc.*, 350 N.C. 567, 572, 515 S.E.2d 438, 441 (1999). The evidence must be viewed in the light most favorable to the non-moving party and all inferences from that evidence must be drawn against the moving party and in favor of the non-moving party. *Id.*

After reviewing the record and considering the parties' oral arguments, we conclude no genuine issues of material fact exist. We review the trial court's conclusions of law.

### V. Transportation Deduction Claim

[1] Plaintiff asserts defendant failed to comply with the North Carolina statutes and the Code, which provide when and how employers may deduct wages from employees' paychecks. We disagree.

### A. Blanket and Specific Authorizations of Wage Withholding

N.C. Gen. Stat. § 95-25.1 *et seq.* comprise the NCWHA. N.C. Gen. Stat. § 95-25.8 (2003) addresses wage withholding, which states:

An employer may withhold or divert any portion of an employee's wages when:

(1) The employer is required or empowered to do so by State or federal law, or

(2) The employer has a written authorization from the employee which is signed on or before the payday for the pay period from which the deduction is to be made indicating the reason for the deduction. Two types of authorization are permitted:

(a) When the amount or rate of the proposed deduction is known and agreed upon in advance, the authorization shall specify the dollar amount or percentage of wages which shall be deducted from one or more paychecks, provided that if the deduction is for the convenience of the employee, the employee shall be given a reasonable opportunity to withdraw the authorization;

(b) When the amount of the proposed deduction is not known and agreed upon in advance, the authorization need not specify a dollar amount which can be deducted from one or more paychecks, provided that the employee receives advance notice of the specific amount of any

proposed deduction and is given a reasonable opportunity to withdraw the authorization before the deduction is made.

The statute offers employers two options of written authorization to deduct wages. First, N.C. Gen. Stat. § 95-25.8(2)(a) addresses deductions of a "known" sum of money, a specific authorization. N.C. Admin. Code tit. 13, r. 12.0305 (June 2004). Employees who agree to specific authorizations must receive from their employers an opportunity to withdraw the authorization before the deduction is made, "if the deduction is for the convenience of the employee . . . ." N.C. Gen. Stat. § 95-25.8(2)(a). Second, N.C. Gen. Stat. § 95-25.8(2)(b) refers to a blanket authorization, one made for an unknown amount of money. N.C. Admin. Code tit. 13, r. 12.0305. Before a deduction may be completed under a blanket authorization, the employee must receive notice of the specific amount and a reasonable opportunity to withdraw the authorization. N.C. Gen. Stat. § 95-25.8(2)(b).

The Code requires wage deduction authorizations to be: (1) written; (2) signed by the employee on or before the payday for the pay period for which the deduction is made; (3) show the date of signing by the employee; and (4) state the reason for the deduction. N.C. Admin. Code tit. 13, r. 12.0305(b). A specific authorization must provide the exact dollar amount or percentage of wages withheld. *Id.* Before wages may be deducted under a blanket authorization, the employee must be provided: (1) advance notice of the specific amount of the proposed deduction; and (2) a reasonable opportunity of at least three calendar days from the employer's notice of the amount to withdraw the authorization. N.C. Admin. Code tit. 13, r. 12.0305(d).

Defendant's policy requires each individual hired to read and sign an employment contract that includes a provision entitled, "Acknowledgment of Transportation Expense and Request to Deduct Transportation Expenses from Wages," which states:

I HEREBY ACKNOWLEDGE that to be eligible for employment with THE COMPANY that I provide my own transportation to a job site. If I am unable to provide my own transportation to a job site, I request THE COMPANY to arrange such transportation for me. I acknowledge that such transportation is for my benefit, and that without THE COMPANY arranging the transportation to the job site, I would not be able to accept employment with THE COMPANY. If THE COMPANY or another employee provides

transportation for me, or if I am advanced funds to provide for my own transportation, I hereby request and authorize THE COMPANY to deduct the actual and reasonable cost, not to exceed specific state law, of that transportation from my wages.

This provision authorizes defendant to withhold wages for the class members use of the van pool. It does not specify a dollar amount for the van pool service and is a blanket authorization under N.C. Gen. Stat. § 95-25.8(2)(b). If this were the only wage deduction authorization form, defendant must provide the class members: (1) advance notice of the specific amount of the proposed deduction; and (2) a reasonable opportunity of at least three calendar days from the employer's notice of the amount to withdraw the authorization. N.C. Admin. Code tit. 13, r. 12.0305(d).

In addition to the employment contract blanket authorization, defendant presents another form to the class members every day. Each work morning, defendant offers the class members transportation to the job sites. Those interested sign a daily log which includes the following language:

I HEREBY ACKNOWLEDGE that I am accepting transportation from a co-employee in order to report to my assigned work site. If I did not accept such transportation, I would be unable to report to the job site assigned, or I would have to use public transportation, if available. I further acknowledge that my share of the cost of transportation shall be $4.00 per round trip, and I agree that this amount is reasonable. Trojan Labor does not set this fee and will not receive any part of the $4.00 cost of transportation. I acknowledge that the cost of transportation reimbursement amount will be credited in full to the co-employee who provides transportation for me to the job site. For each day that I accept as described herein, I agree that Trojan Labor provided transportation to me. I acknowledge and agree that this deduction of the transportation reimbursement from my paycheck by Trojan Labor is reasonable and is an accommodation to me.

I ACKNOWLEDGE AND AGREE that I have a choice to accept the transportation from my co-employee and pay to him/her as explained herein the cost of transportation fee of $4.00 or travel to the job site on public transportation. With full knowledge that I have such a choice, I have elected to accept transportation from my co-employee and to reimburse him/her the cost of transportation as described herein. As a result of this election, I WAIVE any

right to bring any action against Trojan Labor under State or Federal law relating to the cost of transportation to a job site.

This daily log authorizes defendant to withhold wages for the class members use of the van pool. Unlike the blanket authorization above, the daily log provides the class members advance notice of the specific deduction amount, $2.00 each way, and qualifies as a specific authorization under N.C. Gen. Stat. § 95-25.8(2)(a). We further note the deductions for transportation expenses are not automatic. They are conditioned upon the class members specifically requesting use of the van pool each morning. Only then are wages withheld. The class members receive frequent and sufficient notice of the cost to use defendant's van pool. We hold the daily log complies with the requirements of N.C. Gen. Stat. § 95-25.8(2)(a) as a specific authorization.

Defendant's daily log specific authorization form satisfies the Code's formatting and content requirements. The daily log is written, signed by the class members on or before the payday for the pay period for which the deduction is made, includes the date signed, and states the reason for the deduction. N.C. Admin. Code tit. 13, r. 12.0305(b).

On 3 July 2003, defense counsel requested and received an opinion letter from the North Carolina Department of Labor ("the NCDOL") concerning defendant's two authorization forms. In that opinion letter, the NCDOL concluded defendant's daily log form satisfied the statutory and regulatory guidelines concerning wage withholding under a specific authorization. It also determined defendant's employment contract was a blanket authorization under N.C. Gen. Stat. § 95-25.8(2)(b). Accordingly, defendant would need to provide the class members both advance notice of the specific deduction amount and at least three calendar days from the date of the notice of the deduction to withdraw the authorization. N.C. Gen. Stat. § 95-25.8(2)(b); N.C. Admin. Code tit. 13, r. 12.0305(d). The opinion letter also reiterated that defendant need not provide both a specific and blanket authorization form.

While administrative opinion letters are not binding on this Court, we recognize it as evidence of defendant's good faith to comply with the statute. *Brooks, Comr. of Labor v. Grading Co.*, 303 N.C. 573, 581, 281 S.E.2d 24, 29 (1981) (although not binding, interpretations of a statute by the agency created to administer that statute are provided some deference by appellate courts) (citing *In re Appeal of North*

*Carolina Savings and Loan League*, 302 N.C. 458, 466, 276 S.E.2d 404, 410 (1981)).

Defendant's daily log satisfies the requirements of both N.C. Gen. Stat. § 95-25.8(2)(a) and N.C. Admin. Code tit. 13, r. 12.0305(b) as a specific authorization. We decline to consider whether defendant's employment contract meets the statutory and Code requirements as a blanket authorization.

This portion of plaintiff's assignment of error is overruled.

### B. Incident of and Necessary to Employment

Plaintiff contends the optional transportation services offered by defendant to the class members are a benefit to defendant and thus are considered neither wages nor deductible. We disagree.

"An employer is allowed to count as wages the reasonable cost 'of furnishing [an] employee with board, lodging, or other facilities, if such board, lodging, or other facilities are customarily furnished by such employer to his employees.'" *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1236 (2002) (quoting 29 U.S.C. § 203(m)). The employer may then deduct the reasonable cost from the employee's paycheck, even if the net sum is below the minimum wage. 29 C.F.R. § 531.27 (2004). The United States Department of Labor ("the USDOL") defines "other facilities" as

[m]eals furnished at company restaurants or cafeterias or by hospitals, hotels, or restaurants to their employees; meals, dormitory rooms, and tuition furnished by a college to its student employees; housing furnished for dwelling purposes; general merchandise furnished at company stores and commissaries (including articles of food, clothing, and household effects); fuel (including coal, kerosene, firewood, and lumber slabs), electricity, water, and gas furnished for the noncommercial personal use of the employee; transportation furnished employees between their homes and work where the travel time does not constitute hours worked compensable under the Act and the transportation is not *an incident of and necessary to the employment.*

29 C.F.R. § 531.32(a) (2004) (emphasis supplied). If the "facilities" provided are primarily for the benefit of the employer, the cost may not be included in computing wages and the employer must "reimburse the expense up to the point the FLSA minimum wage provi-

sions have been met." *Arriaga*, 305 F.3d at 1241-42; 29 C.F.R. § 531.3(d)(1) (2004). We must decide whether the optional transportation service offered to the class members is "an incident of and necessary to the employment" and primarily for the benefit of defendant. 29 C.F.R. § 531.32(a).

Plaintiff cites *Arriaga* as authority to show the transportation service was "an incident of and necessary to" defendant's business and primarily for defendant's own benefit. 305 F.3d at 1228. There, domestic agricultural employers hired nonimmigrant aliens from Mexico as farm laborers to work on a seasonal basis. *Id.* at 1232. Laborers who passed the interview process paid their own passage to the United States, visa costs, and various recruiting fees. *Id.* at 1234. After deducting these expenses from wages earned, the net income fell below the minimum wage. *Id.* at 1231-32.

The Eleventh Circuit held the transportation costs were "an incident of and necessary to the employment" and the employers must reimburse the laborers for expenses paid in coming to the employment. *Id.* at 1242. The court noted the key factor was transportation costs that were "an inevitable and inescapable consequence of having foreign . . . workers employed in the United States. *Id.* The court carefully distinguished that situation from one where an employer "hires from its locale." *Id.* Further, the court distinguished between costs "arising from the employment itself and those that would arise in the course of ordinary life" by interpreting "other facilities" as meaning "employment-related costs . . . that would arise as a normal living expense." *Id.* at 1242-43.

We find *Arriaga* persuasive, but not as plaintiff argues. The paramount distinction between the case at bar and *Arriaga* is exactly what the court discussed. In *Arriaga*, transportation expenses were both inevitable under the program employers used to recruit and hire foreign workers and is substantially different from normal commuting costs. Here, defendant's transportation service is one of several options the class members may utilize in traveling to and from job sites after defendant "hired from its locale." *Id.* at 1242. The class members may use their own vehicle, ride public transportation, walk, car pool with another driver, or sign up for defendant's optional transportation service. The choices facing the class members are the same encountered by each worker every day and are not unique to defendant's business. It is immaterial that the trip the class members pay for is between defendant's home office and the job sites.

We find the optional transportation offered by defendant falls within the category of "other facilities." *Id.* at 1242-43. Defendant properly deducts the associated transportation cost from the class members' paychecks.

Plaintiff has failed to show and we find no evidence in the record that a genuine issue of material fact exists or defendant improperly withheld wages from the class members. Defendant's authorization form satisfies the requirements of both N.C. Gen. Stat. § 95-25.8 and N.C. Admin. Code tit. 13, r. 12.0305. The class members receive sufficient notice of the transportation option, its cost, the process of electing to use the van pool, and the subsequent wage withholding. This assignment of error is overruled.

### VI. Time Spent Waiting and Traveling to and from Work

[2] Plaintiff contends that time spent waiting and traveling between defendant's office and the job sites is compensable under N.C. Gen. Stat. § 95-25.6 (2003), which states, "[e]very employer shall pay every employee all wages and tips accruing to the employee on the regular payday. Pay periods may be daily, weekly, bi-weekly, semi-monthly, or monthly. Wages based upon bonuses, commissions, or other forms of calculation may be paid as infrequently as annually if prescribed in advance." We disagree.

### A. N.C. Gen. Stat. § 95-25.6

Plaintiff argues defendant is breaching "an express oral if not written contract" between the parties requiring defendant to pay the class members in accordance with the FLSA, which triggers the requirements of N.C. Gen. Stat. § 95-25.6. Plaintiff concedes defendant's employment contract specifically addresses this issue in defendant's favor. However, plaintiff requests this Court to "look[] beyond the language contained in the [contract]" to federal statutes, regulations, and case law, to find waiting and traveling time compensable under these circumstances.

The applicable provision of defendant's employment contract states, "Once you have been given a time ticket, you are completely relieved of duty and are free to use the time between being assigned a time ticket and the time the job starts effectively and for your own purposes."

The record indicates the class members are informed they will only be compensated for time spent working at the job site. A copy of

defendant's employment contract with plaintiff's signature is included in the record on appeal. Plaintiff also testified defendant never told him "hours worked" included wait time or travel time to and from the job site.

The employment contract does not provide for the compensation the class members seek. Plaintiff admitted that he agreed to and understood this policy. This agreement bears his signature. We find no violation of N.C. Gen. Stat. § 95-25.6. We now consider whether federal law requires defendant to compensate the class members for time spent waiting for and traveling to work.

### B. The Portal to Portal Act

The Portal to Portal Act, 29 U.S.C. § 254, does not require employers to pay employees for the following activities:

(1) walking, riding, or traveling to and from the actual place of performance of the *principal activity* or activities which such employee is employed to perform, and

(2) activities which are *preliminary* to or *postliminary* to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a) (2003) (emphasis supplied). The issue before us is whether the class members' wait or travel time is a "principal activity" and compensable. We hold that it is not.

Employers must compensate employees for time spent waiting and traveling when "it is part of a principal activity of the employee, but not if it is a preliminary or postliminary activity." *Vega v. Gasper*, 36 F.3d 417, 425 (5th Cir. 1994) (citing The Portal to Portal Act, 29 U.S.C. § 254 ). "Principal activity" is integral and indispensable to the employer's business. *Karr v. City of Beaumont, Tex.*, 950 F. Supp. 1317, 1322 (E.D.Tex. 1997) (citing *Truslow v. Spotsylvania County Sheriff*, 783 F. Supp. 274, 277 (E.D. Va. 1992) (citing 29 U.S.C. § 254(a)(2), (b)), *aff'd per curiam*, 993 F.2d 1539 (4th Cir. 1993). They include duties " 'performed as part of the regular work of the employees in the ordinary course of business[,] work [that] is necessary to the business . . . . [and also] primarily for the benefit of the employer.' " *Vega*, 36 F.3d at 424 (quoting *Dunlop v. City Electric, Inc.*, 527 F.2d 394, 401 (5th Cir. 1976)).

Preliminary activities are those "engaged in by an employee before the commencement of his 'principal' activity or activities . . . ." 29 C.F.R. § 790.7(b) (2004). " '[P]ostliminary activity' means an activity engaged in by an employee after the completion of his 'principal' activity or activities . . . ." *Id.* Preliminary and postliminary activities are spent primarily for the employees' own interests, completed at the employees' convenience, and not necessary to the employer's business. *Jerzak v. City of South Bend,* 996 F. Supp. 840, 848 (N.D.Ind. 1998).

### 1. Waiting Time

Plaintiff asserts that he and the class members should be compensated for waiting time after receiving job assignments and physically commencing work at the job sites and after stopping work and returning to defendant's office. We consider two factors in determining whether plaintiff's waiting time is a "principal activity," compensable under The Portal to Portal Act. The first issue is whether the time spent is predominantly to benefit the employer and integral to the job. *Preston v. Settle Down Enterprises, Inc.,* 90 F. Supp. 2d 1267, 1278-79 (N.D.Ga. 2000) (citations omitted); *Vega,* 36 F.3d at 425 (citing *Mireles v. Frio Foods, Inc.,* 899 F.2d 1407, 1411 (5th Cir. 1990)). The second issue is whether the employee is able to use the time for their own personal activities. *Vega,* 36 F.3d at 426 (citing *Mireles,* 899 F.2d at 1413.)

Defendant provides temporary labor to its customers on an as-needed basis. Customers request defendant's services when extra help is needed on any variety of construction projects. Defendant hires enough workers on a daily basis to satisfy customers' demands. Workers receive assignments only if work is available on that particular day, on a first come first serve basis. Defendant does not require individuals to wait for customers to request labor services.

After receiving a work assignment, the class members elect how to travel from defendant's office to the job site. They can use their own vehicle, ride public transportation, walk, car pool with another driver, or sign up for defendant's optional transportation service. Defendant neither restricts the class members' activities while they wait for the ride nor while in transit. They are free to do as they please. At the end of the work day, the class members have the option of either returning to the office to get their paycheck that night or at a later date.

Based on this evidence, we hold the class members' time spent waiting is preliminary and postliminary activity and noncompensable. The class members' principal activity, that which defendant hired them for, was to perform work at customers' job sites on a daily basis. Temporary labor is the entire scope of defendant's business. Customers pay for that service, which begins upon arrival at the job site and stops at the end of the work day. The class members' idle time either before or after the workday is personal. Many spend waiting time reading the newspaper, sleeping, drinking coffee, eating meals, watching television, or socializing with other waiting workers.

The amount of time the class members spend waiting directly correlates to their choice of transportation. They are free to spend that time as they wish. It is neither beneficial nor indispensable to defendant's business. We decline to extend "hours worked" to include the class members' waiting time prior to arrival at or after leaving the job site at the end of the day.

## 2. Travel Time

Travel time is only compensable under The Portal to Portal Act if it is a principal activity of the employee. 29 U.S.C. § 254. Normal commuting from home to work and back is considered ordinary travel and not a "principal activity" absent a contract stating otherwise. 29 U.S.C. § 254; 29 C.F.R. §§ 785.34, 785.35 (2004). Travel from an employer's campus to the "actual place of performance" is noncompensable. 29 C.F.R. § 790.7(e) (2004). However, travel between job sites *after* work has begun for the day is compensable. *Wirtz v. Sherman Enterprises, Inc.*, 229 F. Supp. 746, 753 (1964) (emphasis supplied); 29 C.F.R. § 785.38 (2004).

Plaintiff relies heavily on *Preston*, 90 F. Supp. 2d 1267, to support its argument that travel time to and from the job sites is compensable as a principal activity. In *Preston*, the defendant provided temporary labor to customers on a daily basis. 90 F. Supp. 2d at 1272. Laborers hired were furnished transportation from the defendant's office to the job sites. *Id.* at 1273. The court analyzed the issue by reviewing 29 C.F.R. § 785.38, which states in part:

> Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked. Where an employee is required to report at a meeting place to receive instructions or to perform

other work there, or to pick up and to carry tools, the travel from the designated place to the work place is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice.

Based on this regulation, the court considered three important factors: (1) whether workers were required to meet at the defendant's office before going to the job site; (2) whether workers performed labor before going to the job site; and (3) whether workers picked up and carried tools to the job site. *Preston*, 90 F. Supp. 2d at 1280-81. Factors two and three did not apply in *Preston. Id.* at 1280. However, the court ruled on factor one that "arriving at a business on one's own initiative seeking employment" is not the same as an employer requiring an employee to report at a meeting place. *Id.* at 1280-81. Thus, "hours worked" did not begin accruing until after arrival at the job site.

Applying the same analysis here, we find identical answers to factors one and two. First, defendant does not require employees to report at its office at a certain time. Rather, it established the policy for laborers to follow if they are interested in seeking employment from defendant on a daily basis. Second, the class members do not perform any work either at defendant's office, or while in transit to the job sites. Third, unlike *Preston*, the record indicates that the class members are provided personal protective equipment after receiving an assignment and before reporting to the job site. We address factor three, the picking up and carrying of tools to the job site.

In *Crenshaw v. Quarles Drilling Corp.*, 798 F.2d 1345 (10th Cir. 1986) and *D A & S Oil Well Servicing, Inc. v. Mitchell*, 262 F.2d 552 (10th Cir. 1958), the courts found travel time compensable as an indispensable part of the employees' jobs. Employer-defendants in both cases required their employees to transport specialized equipment necessary to service oil wells. *Crenshaw*, 798 F.2d at 1346; *D A & S Oil Well Servicing, Inc.*, 262 F.2d at 553-54. In an unpublished opinion, the District Court for the Eastern District of Kentucky held that in situations where employees are transporting specialized equipment to the job site, "it can be concluded that the transportation of specialized equipment, provided by the employer, is work in and of itself." *Spencer v. Auditor of Public Accounts*, No. 88-54, 1990 U.S. Dist. Lexis 1076 (E.D.Ky. Jan. 30, 1990).

The USDOL addressed this issue in 29 C.F.R. § 790.7, its own expansive interpretation of "preliminary" and "postliminary" activi-

ties. The regulation distinguished between an employee transporting heavy equipment and ordinary hand tools. 29 C.F.R. § 790.7(d) (2004). In considering heavy equipment, the regulation states the employee's travel "is not segreable from the simultaneous performance of his assigned work (the carrying of the equipment, etc.) . . . ." and does not fall under the noncompensable travel outlined by The Portal to Portal Act. *Id.*

We agree with this distinction between the transportation of specialized and heavy equipment and the non-unique protective equipment issued to the class members by defendant. The record indicates the class members receive hard hats, boots, and gloves. These implements are not "specialized" and are used in a wide variety of manual labor jobs. It is a different situation from an employee transporting specialized vehicles, tools, or heavy equipment necessary to perform specialized work. The receipt of general protective equipment does not make travel time compensable under 29 C.F.R. § 785.38. If its issuance constituted the beginning of "hours worked," employers would wait until employees arrived at the job site before distributing the protective gear.

The Fifth Circuit encountered the issue of compensable travel time in *Vega*, 36 F.3d 417. The defendant, a farm laborer contractor, provided its employee-laborers transportation, for a fee, to and from the farm sites. *Id.* at 423. The court held the traveling time was preliminary and postliminary activity and not compensable. *Id.* at 425. It based its decision on factors present in the case at bar. First, the laborers performed no work prior to getting on the bus in the morning. *Id.* Second, the defendant offered the transportation as an option to the workers and did not require its usage. *Id.* Third, not all of the laborers elected to use the transportation. *Id.* The court concluded the travel from the defendant's office to the farm sites was an "an extended home-to-work-and-back commute." *Id.*

These factors, together with our analysis of *Preston*, compels us to hold that the class members' travel time is a preliminary and postliminary activity and is noncompensable. This assignment of error is overruled.

## VII. Conclusion

Defendant complies with N.C. Gen. Stat. § 95-25.8 and N.C. Admin. Code tit. 13, r. 12.0305 in withholding the class members' wages to pay for an optional transportation service to and from job

sites. The class members are not due compensation for time spent waiting for and traveling on defendant's optional transportation service under N.C. Gen. Stat. § 95-25.6. The trial court's grant of summary judgment for defendant is affirmed.

Affirmed.

Judges BRYANT and LEVINSON concur.