IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-542

Filed: 7 June 2016

Forsyth County, No. 13 CVS 1671

ROBERT V. POWELL, Plaintiff

v.

P2ENTERPRISES, LLC and ROBERT HENRY POWELL, Defendants

Appeal by plaintiff from order entered 11 June 2014 by Judge Richard W. Stone in Forsyth County Superior Court. Heard in the Court of Appeals 20 October 2015.

*The Law Office of Herman L. Stephens, by Herman L. Stephens, for plaintiff.*

*Morrow Porter Vermitsky Fowler & Taylor, PLLC, by John N. Taylor, Jr. and John C. Vermitsky, for defendants.*

CALABRIA, Judge.

Plaintiff Robert V. Powell ("Robert") initiated this action on 13 March 2013 by filing a complaint against P2Enterprises, LLC ("P2E") and his father, Robert Henry Powell ("Powell") (collectively, "defendants"), alleging unpaid wages under the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. §§ 95–25.1, *et seq*. Robert now appeals the trial court's grant of summary judgment in favor of defendants. We affirm.

In 2008, after Robert approached Powell with the idea of owning and operating a restaurant, the parties set up P2E, a manager-managed limited liability company organized under the laws of North Carolina. They named the company

"P2Enterprises" to reflect the two Powells who were involved in the restaurant venture. According to P2E's Articles of Organization and related documents, Robert was its only Manager and Powell was the company's sole Member. On 2 July 2010, the parties executed a document giving P2E's Member and Manager "signing authority in all matters concerning the Corporation." On 4 October 2010, P2E acquired a restaurant located in Winston-Salem, North Carolina, and named it "Bob's Big Gas Subs and Pub" ("the restaurant"). Together, Robert and Powell created the idea and concept for the restaurant, a sub sandwich shop housed in a converted gas station. Both parties' signatures and titles appear on loan documents and the restaurant's lease.

In addition to his role as Manager of P2E, Robert also served as general manager of the restaurant. He was in charge of hiring and training employees; dealing with vendors; managing payroll and other expenses; setting employees' schedules; ordering food, beer, and supplies; and handling other daily operational tasks. Powell was rarely involved in the restaurant's day-to-day operations. He provided free labor when the restaurant was short-staffed, but his main role was serving as the "money man."

Although the restaurant appeared to be operating well, it was chronically short on cash. Whenever there were insufficient funds to pay vendors and restaurant staff, Robert would call Powell to request additional money. Occasionally, Powell

responded that he could not contribute funds. When funds were not forthcoming from Powell, Robert decided not to pay himself for that pay period rather than default on other expenses.

By early 2011, Robert and Powell's working relationship started to suffer. In April 2011, Robert told head chef Tim Papenbrock ("Papenbrock") that he planned to buy Powell out. Around the same time, Powell distanced himself from the operation of the restaurant and took another job. Robert retained full control over the restaurant's operations. In 2012, a dispute arose between Robert and Powell regarding Robert's failure to pay the restaurant's expenses, including rent, utilities, and vendor bills. At that time, Powell learned that due to the restaurant's financial struggles, Robert had not paid himself for certain pay periods. Powell agreed to pay Robert $16,917.00 in back wages. However, in December 2012, when Powell sought to reassert some control over the restaurant's management, Robert tried to convince Papenbrock and other employees to leave with him in an attempt to force the restaurant to shut down. He intended to reopen without Powell and rehire the restaurant staff, but none of the employees agreed to Robert's plan. In January 2013, following a dispute with his father, Robert quit his job as general manager of the restaurant.

On 15 March 2013, Robert filed a complaint against defendants, alleging liability for unpaid wages plus interest, liquidated damages, and attorneys' fees,

pursuant to the NCWHA. In response, defendants filed counterclaims and sought damages for breach of contract, conversion, constructive fraud, and breach of fiduciary duty. Defendants also moved for summary judgment on Robert's claims. The motion was heard by the Honorable Richard W. Stone on 5 May 2014 in Forsyth County Superior Court. On 11 June 2014, Judge Stone entered an order granting defendants' motion and dismissing all of Robert's claims with prejudice. Defendant's voluntarily dismissed their counterclaims against Robert without prejudice on 7 October 2014. Robert appeals.

On appeal, Robert argues that several factors establish defendants' liability for his unpaid wages under the NCWHA. Specifically, Robert contends that, *inter alia*, the appearance of Powell's electronic signature on all paychecks, Powell's establishment of and control over bank accounts that funded the restaurant, P2E's use of Powell's home address as its mailing and registered office address, and Powell's role as P2E's "money man" are dispositive of his claims. We disagree.

"Our standard of review of an appeal from summary judgment is *de novo*; such judgment is appropriate only when the record shows that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008) (quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)). "In ruling on a motion for summary judgment the evidence is viewed in the light most favorable to the non-

moving party." *Hinson v. Hinson*, 80 N.C. App. 561, 563, 343 S.E.2d 266, 268 (1986) (citation omitted). "A defendant may show entitlement to summary judgment by (1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense." *Draughon v. Harnett Cty. Bd. of Educ.*, 158 N.C. App. 705, 708, 582 S.E.2d 343, 345 (2003) (internal quotation marks and citation omitted). Furthermore, if a grant of summary judgment "can be sustained on any grounds, it should be affirmed on appeal." *Shore v. Brown*, 324 N.C. 427, 428, 378 S.E.2d 778, 779 (1989).

The NCWHA and the federal Fair Labor Standards Act ("FLSA") provide for recovery of an employee's unpaid wages from an "employer." N.C. Gen. Stat. § 95–25.22(a); 29 U.S.C. § 216(b). "The NCWHA is modeled after the FLSA." *Hyman v. Efficiency, Inc.*, 167 N.C. App. 134, 137, 605 S.E.2d 254, 257 (2004) (citing *Laborers' Int'l Union of N. Am. v. Case Farms, Inc.*, 127 N.C. App. 312, 314, 488 S.E.2d 632, 634 (1997)). As such, "[i]n interpreting the NCWHA, North Carolina courts look to the FLSA for guidance." *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 707 (E.D.N.C. 2009); *see also Hyman*, 167 N.C. App. at 142-49, 605 S.E.2d 260-64 (applying federal employment case law to wage withholding and other claims brought pursuant to the NCWHA); *Laborers' Int'l*, 127 N.C. App. at 314, 488 S.E.2d at 634

(noting the NCWHA is modeled after the FLSA and relying on federal case law's interpretation of the term "employee"). Under the FLSA, a plaintiff bears the burden of establishing that he or she is an "employee." *Steelman v. Hirsch*, 473 F.3d 124, 128 (4th Cir. 2007) (citation omitted).

An "employer" is "any person acting directly or indirectly in the interest of an employer in relation to an employee." N.C. Gen. Stat. § 95–25.2(5); 29 U.S.C. § 203(d). Under both state and federal law, the term "person" includes individuals as well as commercial entities such as corporations. N.C. Gen. Stat. § 95–25.2(11); 29 U.S.C. § 203(a). "Accordingly, it is well established that, under certain conditions, individuals may be subjected to liability for unpaid wages[.]" *Garcia*, 644 F.Supp. 2d at 720. Specifically, the NCWHA makes an "employer" liable for unpaid wages, liquidated damages, costs, and reasonable attorneys' fees. N.C. Gen. Stat. § 95–25.22.

"Described as 'expansive' by the [United States] Supreme Court, *see Falk v. Brennan*, 414 U.S. 190, 195 (1973), the term 'employer' is 'to be construed liberally [under the FLSA] because by it Congress intended to protect the country's workers.' " *Garcia*, 644 F. Supp. 2d at 720 (citation omitted). But the term "does have its limits." *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 295 (1985). As a result, whether a person constitutes an "employer" under the FLSA "turns upon the degree of control and direction one has over the daily work of an individual. The right to control, not necessarily the actual existence of control, is important." *Zelaya v.*

*J.M. Macias, Inc.*, 175 F.R.D. 625, 626 (E.D.N.C. 1997) (citations omitted). To decide

whether an individual is an "employer" for purposes of NCWHA and FLSA liability,

courts apply an "economic reality" test.[1] *Garcia*, 644 F. Supp. 2d at 720. This test

examines "the totality of the circumstances to determine whether the individual has

sufficient operational control over the workers in question and the allegedly violative

actions to be held liable for unpaid wages or other damages." *Id.* (citation and

quotations omitted).

> Factors commonly relied on by courts in determining the extent of an
> individual's operational control over employees include whether the
> individual: (1) had the power to hire and fire the employees; (2)
> supervised and controlled employee work schedules or conditions of
> employment; (3) determined the rate and method of payment; and (4)
> maintained employment records.

*Id.* at 721 (citations omitted); *see also Thompson v. Blessed Home Inc.*, 22 F. Supp. 3d

542, 550 (E.D.N.C. 2014) (citing *Garcia* and applying the "economic reality" test to

the plaintiff's FLSA and NCWHA claims). "These factors are not exclusive nor is any

one factor dispositive. Rather, the determination of whether a particular individual

had sufficient operational control within a business enterprise to be considered an

'employer' for purposes of the FLSA requires a consideration of all of the

---

[1] We note that the Fourth Circuit applies a different, six-factor "economic realities" test to determine whether an individual is an employee or independent contractor under the FLSA. *See Sigala v. ABR of VA, Inc.*, No. GJH-15-1779, 2016 WL 1643759, at \*5 (D. Md. Apr. 21, 2016) (citing *Schultz v. Capital International Security, Inc.*, 466 F.3d 298, 305 (4th Cir. 2006)).

circumstances and relevant evidence." *Garcia*, 644 F. Supp. 2d at 720 (internal brackets and citations omitted); *see also Steelman*, 473 F.3d at 128 (noting that "courts have been exhorted to examine 'the circumstances of the whole activity,' rather than 'isolated factors,' or 'technical concepts' ") (internal citations omitted). The gist of federal case law is that since economic reality must be determined based upon all the circumstances, courts should examine any relevant evidence so as to avoid applying the test in a narrow, mechanical fashion. *See Steelman v. Hirsch*, 473 F.3d 124, 128 (4th Cir. 2007) (noting that federal case law makes it "clear that the 'economic reality' standard calls for pragmatic construction" of employment relationships and that any judicial evaluation in this context must examine "the circumstances of the whole activity" instead of "isolated factors") (citations omitted).

Applying the economic reality test to the instant case, it appears that Robert, rather than Powell, fits the definition of an "employer" under the NCWHA. As to the first factor, the power to hire and fire employees, both Robert and Powell appear to have shared that authority. Regarding Robert's employment at the restaurant, the parties disagree as to whether he quit or was fired. Although Robert asserts that he was terminated, employee affidavits that were submitted by defendants suggest that Robert voluntarily left his position following a dispute with Powell over his decision to retain Papenbrock as head chef. Regardless of the characterization, however, this type of departure seems to be less relevant in the context of NCWHA and FLSA

liability. Considering all relevant evidence, including Robert's deposition and the affidavits of several restaurant employees, it appears that Powell held the authority to hire and fire simply by virtue of his executive position in P2E. By contrast, as general manager of the restaurant, Robert directly hired and fired staff, and exercised control over employees' daily responsibilities. Although Powell attended the interview process that took place during the restaurant's start-up phase, and he participated in a decision to hire two additional operational managers who were subordinate to Robert, Robert agreed that it was ultimately his decision to hire both managers. Subsequently, Robert, along with one of the newly hired operational managers, organized a two-day interview process to hire restaurant staff and conducted "ServSafe" training for the new employees.

Regarding the second economic reality test factor, the ability to supervise and control employees' work schedules, Robert acknowledged that he was an operational manager, but denied having "operational authority" or control. However, the facts of this case prove this is a distinction without a difference. When he managed the restaurant, Robert was responsible for setting employee and management schedules (including his own), ordering food and beer, paying vendors, supervising the kitchen and dining areas, and answering customer concerns and complaints. Conversely, Powell was merely the restaurant's "money man." Although he sometimes provided free labor whenever the restaurant was short-staffed, he was off-site more often than

not. Furthermore, at his deposition, Robert testified that Powell was "not active in the operation" during the period of time between October 2011 and December 2012.

As to the third factor, during his deposition, Robert agreed that it was "fair" to state that he set the rate and method of payment for employees. Robert initially paid the restaurant staff $9.00 per hour based on his own experience in the hospitality industry and the fact that the restaurant would not be a full-service establishment employing tipped wait staff. According to Robert, a separate company processed payroll, including withholding and other calculations, for all restaurant employees. Robert and one of the operational managers, Brian Zollicoffer ("Zollicoffer"), submitted biweekly reports to the payroll company for processing. Powell did not actively participate in the payroll process. According to Zollicoffer, Powell "had nothing to do with deciding" whether the salaried employees, including Robert, got paid for any particular pay period. When cash flow was tight and Powell could or would not fund the shortfall, Robert decided not to submit information to the payroll company regarding the hours he had worked. As a result, he did not get paid for those periods. While no one factor of the economic reality test is dispositive, we nonetheless find this third factor to be especially significant in this case, since Robert's primary objective in this action was to recover unpaid wages that he claimed Powell owed him. Although Powell may have had some control over the amount of money in the P2E bank accounts, his only direct involvement in the payroll process

was the appearance of his "electronic signature" on all paychecks. When Robert chose not to submit information regarding the hours he worked to the payroll company that would have generated a check for his salary during a particular pay period, he did so at his own discretion and without Powell's prior knowledge or approval. Consequently, given Robert's control over the payroll process and, more importantly, his control over his own salary, it was Robert who failed to pay himself the wages he now seeks to recover from Powell.

Finally, as to the fourth economic reality test factor, Robert agreed at his deposition that he was in charge of maintaining employment records and personnel files. There is no record evidence to suggest that Powell maintained any employment records.

Reviewing the evidence in the light most favorable to Robert, he fails to explain how these factors pertain to the economic realities of this case. Powell and P2E cannot be adjudged an "employer" for purposes of the NCWHA under any analysis based in "economic reality." The record reveals that Robert consulted with Powell prior to significant expenditures, and that he relied on Powell for funding during the restaurant's economic shortfalls. Yet Robert's operational control over the restaurant's operations was substantial as well as consistently exercised. Powell took no responsibility for the direct supervision of the restaurant's employees. Even when the record is viewed in the light most favorable to Robert, it could not lead a rational

trier of fact to find for him. As a result, there was no genuine issue of fact for trial and the trial court properly granted defendants' motion for summary judgment.

Pursuant to the NCWHA and the economic reality test, Powell and P2E were not employers for the purposes of Robert's unpaid wages claim. Although Powell maintained financial control over the restaurant by virtue of his position as the sole Member of P2E, he did not have significant day-to-day, operational control over the restaurant's employees. Accordingly, we affirm the trial court's grant of summary judgment in favor of defendants.

AFFIRMED.

Judges BRYANT and ZACHARY concur.