Assurance Grp., LLC v. Shackelford, 2026 NCBC 23.

STATE OF NORTH CAROLINA

RANDOLPH COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
25CV000662-750

THE ASSURANCE GROUP, LLC,

Plaintiff,

v.

DARRIN H. SHACKELFORD;
BRANDON S. PASSE; ABBY
BEAVER LYNCH; KRISTIE ALICE
SHACKELFORD; LORIANNA
PASSE; and EPIC BROKER
SOLUTIONS, LLC,

Defendants and
Third-Party
Plaintiffs,

v.

EDWARD LEE SHACKELFORD,

Third-Party
Defendant.

**ORDER AND OPINION ON
PLAINTIFF'S MOTION TO STRIKE
AND MOTION TO DISMISS
AMENDED COUNTERCLAIMS**

**THIS MATTER** is before the Court on Plaintiff The Assurance Group, LLC's

("TAG") Motion to Strike (ECF No. 26) and Motion to Dismiss (ECF No. 27)

(collectively, the "Motions").

**THE COURT**, having considered the Motions, the briefs of the parties, the

arguments of counsel, and all appropriate matters of record, **CONCLUDES** that the

Motion to Strike should be **DENIED** and the Motion to Dismiss should be

**GRANTED in part** and **DENIED in part** for the reasons set forth below.

> *Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Robert J.
> King III, Kimberly M. Marston, William A. Robertson, and Susan S.
> Stutts, for Plaintiff and Third-Party Defendant.*
>
> *Higgins Benjamin, PLLC, by Jonathan Wall and John F. Bloss, for
> Defendants.*

Davis, Judge.

## INTRODUCTION

1.     This case concerns a contentious dispute between an insurance marketing organization ("IMO") and several of its former employees and independent contractors as well as a new company that they formed to compete with the IMO.  The present motion concerns whether the counterclaims asserted against the IMO state valid claims for relief under North Carolina law.

## FACTUAL AND PROCEDURAL BACKGROUND

2.     The Court does not make findings of fact in connection with a motion to dismiss under Rule 12(b)(6) of the North Carolina Rules of Civil Procedure and instead recites those facts contained in the complaint or, in this case, the counterclaims (and in documents attached to, referred to, or incorporated by reference in the counterclaims) that are relevant to the Court's determination of the motion.  *See, e.g.*, *Window World of Baton Rouge, LLC v. Window World, Inc.*, 2017 NCBC LEXIS 60, at *11 (N.C. Super. Ct. July 12, 2017).

3.     Plaintiff TAG is a Delaware limited liability company with its principal place of business in Randolph County, North Carolina.  (Am. Compl., ECF No. 4, ¶ 1.)[1]

4.     Defendant Darrin H. Shackelford ("D. Shackelford") is a North Carolina citizen and a resident of Randolph County, North Carolina.  (Am. Compl. ¶ 2.)

5.      Defendant Brandon S. Passe ("B. Passe") is a North Carolina citizen

---

[1] Defendants' Amended Answer, Counterclaims, and Third-Party Complaint ("Amended Counterclaims") restate and incorporate by reference the allegations contained in paragraphs one through eight of TAG's First Amended Complaint.  (Am. Countercls., ECF No. 12, ¶ 2.)

and a resident of Davidson County, North Carolina. (Am. Compl. ¶ 3.)

6. Defendant Abby Beaver Lynch is a North Carolina citizen and a resident of Guilford County, North Carolina. (Am. Compl. ¶ 4.)

7. Defendant Kristie Alice Shackelford ("K. Shackelford") is a North Carolina citizen and a resident of Randolph County, North Carolina. (Am. Compl. ¶ 5.)

8. Defendant Lorianna Passe ("L. Passe") is a North Carolina citizen and a resident of Davidson County, North Carolina. (Am. Compl. ¶ 6.)

9. Defendant EPIC Broker Solutions, LLC ("EPIC") is a North Carolina limited liability company with its principal office in Asheboro, North Carolina. (Am. Compl. ¶ 7.)

10. Third-Party Defendant Edward Lee Shackelford ("Ed Shackelford") is a North Carolina citizen and a resident of Davidson County, North Carolina. (Am. Countercls. ¶ 3.)

11. In June 2024, counterclaimants K. Shackelford and A. Lynch formed EPIC, an insurance brokerage firm and a competitor of TAG. (Am. Countercls. ¶¶ 5, 7.)

12. Upon EPIC's formation, several agents working for TAG "were extremely dissatisfied with changes being made at TAG and sought out other opportunities." (Am. Countercls. ¶ 6.) As a result, a number of TAG agents became employed as independent agents of EPIC. (Am. Countercls. ¶ 7.) Among them were B. Passe and D. Shackelford, who resigned from TAG on 17 February 2025 and

shortly thereafter began their employment with EPIC. (Am. Countercls. ¶ 8.)

13. Since then, TAG "ha[s] instructed its agents (both employees and independent agents) to make unsolicited house calls ('door-knock[s]') on [clients] for whom Epic agents remained the agent of record[,]" which are considered "orphan accounts." (Am. Countercls. ¶¶ 12, 16.)

14. An agent of record is the agent who sells an insurance product to a client. (Am. Countercls. ¶ 9.) Once an insurance product is sold to a client, that agent of record—whether employed by TAG or EPIC—becomes the client's "main point of contact." (Am. Countercls. ¶ 9.)

15. An orphan account is a client's account for which the agent of record is no longer employed by TAG. (Am. Countercls. ¶ 12.) In other words, insurance policies that current EPIC agents sold during their employment at TAG are deemed orphan accounts. (Am. Countercls. ¶ 12.)

16. The Center for Medicare and Medicaid Services ("CMS")—the federal agency overseeing the insurance marketing industry in which TAG and EPIC operate—generally prohibits insurance agents from making unsolicited calls to clients. (Am. Countercls. ¶¶ 13–15); *see also* 42 C.F.R. §§ 422.2263–64.

17. TAG's door-knocking of orphan accounts came "with the intent to sell the [clients] new insurance products that would replace their active policies." (Am. Countercls. ¶ 17.) During this process, Ed Shackelford, the President of TAG, "instructed and approved TAG agents to make misrepresentations about EPIC brokers." (Am. Countercls. ¶ 19.)

18. TAG agents' misrepresentations to clients of orphan accounts included statements that the agents of record—EPIC agents—were "no longer working" as agents, "had left the industry . . . or the area under clouded circumstances[,]" and were "in legal trouble." (Am. Countercls. ¶¶ 19, 21.) Further, TAG agents told clients that they "must sign documents" to replace their agent of record (an EPIC agent) with a TAG agent. (Am. Countercls. ¶ 20.)

19. On 24 February 2025, TAG initiated the present lawsuit by filing a Complaint in Randolph County Superior Court against only D. Shackelford and B. Passe. (ECF No. 3.) The Complaint asserted claims against both defendants for breach of contract, violation of the North Carolina Trade Secrets Protection Act, tortious interference with contract, unfair or deceptive trade practices ("UDTP"), civil conspiracy, and money owed. (Compl. ¶¶ 55–80.)

20. TAG subsequently filed a First Amended Complaint on 6 May 2025 and a Second Amended Complaint (ECF No. 126) on 9 March 2026.

21. This matter was designated to the Business Court and assigned to the undersigned on 24 June 2025. (ECF Nos. 1–2.)

22. On 27 June 2025, Defendants filed an Answer, Counterclaims, and Third-Party Complaint. (ECF No. 7.) In this pleading, Defendants added Ed Shackelford as a Third-Party Defendant and asserted claims against TAG and Ed Shackelford for tortious interference with prospective economic advantage, defamation, UDTP, violations of the North Carolina Wage and Hour Act, and for declaratory relief.

23. Defendants filed their Amended Counterclaims on 25 August 2025. In their Amended Counterclaims, Defendants added new allegations in support of their claims against TAG and Ed Shackelford for tortious interference with contract and prospective economic advantage and their UDTP claim.

24. On 7 October 2025, TAG filed the present Motion to Strike and Motion to Dismiss.

25. The Court held a hearing on the Motions on 20 February 2026 at which all parties were represented by counsel.

26. The Motions have been fully briefed and are now ripe for resolution.

**LEGAL STANDARD**

27. In ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court reviews the allegations in the complaint in the light most favorable to the plaintiff. *See Christenbury Eye Ctr., P.A. v. Medflow, Inc.*, 370 N.C. 1, 5 (2017). The Court's inquiry is "whether, as a matter of law, the allegations of the complaint . . . are sufficient to state a claim upon which relief may be granted under some legal theory[.]" *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670 (1987). The Court accepts all well-pleaded factual allegations in the relevant pleading as true. *See Krawiec v. Manly*, 370 N.C. 602, 606 (2018). The Court is therefore not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. HHS, Div. of Facility Servs.*, 174 N.C. App. 266, 274 (2005) (cleaned up).

28. Furthermore, the Court "can reject allegations that are contradicted by

the documents attached, specifically referred to, or incorporated by reference in the complaint." *Moch v. A.M. Pappas & Assocs., LLC*, 251 N.C. App. 198, 206 (2016) (cleaned up). The Court may consider these attached or incorporated documents without converting the Rule 12(b)(6) motion into a motion for summary judgment. *Id.* (cleaned up). Moreover, the Court "may properly consider documents which are the subject of a plaintiff's complaint and to which the complaint specifically refers even though they are presented by the defendant." *Oberlin Cap., L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (cleaned up).

29. Our Supreme Court has observed that "[i]t is well established that dismissal pursuant to Rule 12(b)(6) is proper when (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim." *Corwin v. Brit. Am. Tobacco PLC*, 371 N.C. 605, 615 (2018) (cleaned up).

## ANALYSIS

### I.  Motion to Strike

30. Rule 12(f) of the North Carolina Rules of Civil Procedure permits a judge, upon motion or *sua sponte*, to "strik[e] from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." N.C. R. Civ. P. 12(f). The purpose of this rule is to "avoid expenditure of time and resources before trial by removing spurious issues, whether introduced by original or amended complaint." *Estrada v. Jaques*, 70 N.C. App. 627, 642 (1984)

(cleaned up). A motion to strike is addressed to the sound discretion of the trial court. *Broughton v. McClatchy Newspapers, Inc.*, 161 N.C. App. 20, 25 (2003) (cleaned up).

31. In the Motion to Strike, TAG contends that paragraph six of Defendants' Amended Counterclaims should be stricken pursuant to Rule 12(f) because it impermissibly incorporates allegations from a complaint in another lawsuit. Paragraph six states as follows:

> After Epic formed, several of Plaintiff's agents were extremely dissatisfied with changes being made at TAG and sought out other opportunities. Their grievances are set forth in a lawsuit filed by 20 former agents on May 22, 2025, *Britcher v. The Assurance Group, LLC*, No. 25CV001638-750 (Randolph County Super. Ct.). A copy of the *Britcher* Complaint is attached as **Exhibit 1**. Paragraphs 1–87 sets out in more detail the relationship of TAG to its agents, and those paragraphs are incorporated herein by reference.

(Am. Countercls. ¶ 6.)

32. TAG takes issue with Defendants' attempt to incorporate by reference allegations from a complaint "brought by different parties in a different lawsuit against TAG." (Br. Supp. Mot. Strike Mot. Dismiss, at 5.)

33. However, TAG's argument is foreclosed by our Supreme Court's decision in *Stanback v. Stanback*, 297 N.C. 181 (1979). In that case, the plaintiff's second claim "was predicated on [the defendant's] conduct in bringing a prior suit in federal court against the I.R.S. and joining the plaintiff as a co-defendant therein." *Id.* at 199. Notably, "[a] copy of the complaint filed in that [federal court] action was attached to and explicitly incorporated as part of [the] plaintiff's complaint" in *Stanback*. *Id.* In determining whether the Court of Appeals had properly affirmed the trial court's dismissal of the plaintiff's second claim, the Supreme Court ruled

that the Court of Appeals had incorrectly viewed the federal complaint as a matter outside of the pleadings. *Id.* at 205.

> The Court of Appeals held that the dismissal of plaintiff's Count Number II was "with prejudice" because in ruling on the 12(b)(6) motion the trial judge examined the pleadings in defendant's suit brought against plaintiff in federal court. A Rule 12(b)(6) motion to dismiss for failure to state a claim is indeed converted to a Rule 56 motion for summary judgment when matters outside the pleadings are presented to and not excluded by the court. *Kessing v. Mortgage Corp.*, 278 N.C. 523, 180 S.E.2d 823 (1971). And a grant of summary judgment operates as a final judgment on the particular claim to which the motion is addressed. There is a multitude of federal cases considering the issue of when a Rule 12(b)(6) motion is converted into a Rule 56 motion for summary judgment by consideration of matters outside the pleadings under the Federal Rules of Civil Procedure. *See Annot.* 2 A.L.R. Fed. 1027. We need not consider at this time, however, what matters outside the pleadings presented to and considered by the court will result in conversion to a Rule 56 summary judgment proceeding. In paragraph (2) of the Count Number II of her complaint, plaintiff specifically incorporated by reference as an exhibit the complaint in the federal court action and a copy of it was attached to her complaint in this action. N.C. R. Civ. P. 10(c) provides in part, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof *for all purposes*." (Emphasis added.) The complaint in the federal court action was not, therefore, a matter outside the pleadings, and the motion to dismiss under Rule 12(b)(6) remained just that. Should plaintiff be able to state a claim for relief based on the occurrences underlying her allegations in this Count Number II, the dismissal of that claim under Rule 12(b)(6), which we now affirm, will not affect her right to do so.

*Id.* at 205–06 (emphasis added).

34.    Here, Defendants specifically incorporated by reference portions of the *Britcher* Complaint, a copy of which was attached to their Amended Counterclaims. As a result, paragraphs 1–87 of the *Britcher* Complaint were properly incorporated by reference in the Amended Counterclaims.

35.    Therefore, the Court concludes that TAG's Motion to Strike is **DENIED**.

**II.     Motion to Dismiss**

36.     As noted above, Defendants have asserted counterclaims against TAG and Ed Shackelford for tortious interference with contract and prospective economic advantage, defamation, UDTP, violations of the North Carolina Wage and Hour Act, and declaratory relief.

37.     In its Motion to Dismiss, TAG seeks dismissal of all of Defendants' claims, except for their claims for declaratory relief and their Wage and Hour Act claim against TAG itself.[2]

**A.     Tortious Interference With Contract and Prospective Economic Advantage**

38.     In their Amended Counterclaims, Defendants purport to be asserting claims for both tortious interference with contract and tortious interference with prospective economic advantage.  However, in Defendants' response brief, they fail to respond to TAG's argument as to why dismissal of the claim for tortious interference with prospective economic advantage is proper.

39.     Furthermore, at the 20 February 2026 hearing, counsel for Defendants acknowledged that they were only pursuing a tortious interference with contract claim.

40.     Therefore, to the extent the Amended Counterclaims also contained a claim for tortious interference with prospective economic advantage, that counterclaim is **DISMISSED with prejudice**.

---

[2] As discussed in more detail below, TAG does, however, seek dismissal of Defendants' claim against *Ed Shackelford* for violation of the Wage and Hour Act.

41.     Our Supreme Court has articulated the following elements of a tortious interference with existing contract claim:

> (1) a valid contract between the plaintiff and a third person which confers upon the plaintiff a contractual right against a third person; (2) the defendant knows of the contract; (3) the defendant intentionally induces the third person not to perform the contract; (4) and in doing so acts without justification; (5) resulting in actual damage to plaintiff.

*United Lab'ys, Inc. v. Kuykendall*, 322 N.C. 643, 661 (1988) (cleaned up).

42.     At the 20 February 2026 hearing, Defendants' counsel clarified their basis for this claim.  Defendants are asserting that (1) they were third-party beneficiaries of the contracts for insurance that existed between the policyholders to whom they sold policies and the insurance companies who issued those policies; (2) TAG—acting without justification—induced policyholders to change their agent/broker of record from Defendants to TAG; and (3) Defendants suffered accompanying monetary injury involving the loss of commissions they otherwise would have received (or retained).

43.     It is undisputed that Defendants were not actual parties to the insurance contracts at issue, which were instead between the policyholder and the insurance company.  It is true that there is North Carolina case law suggesting that under some circumstances a tortious interference with contract claim may be asserted by one who—although not an actual party to the contract at issue—was a third-party beneficiary.  *See L. Offs. of Matthew K. Rogers, PLLC v. Fisher*, 2020 N.C. App. LEXIS 649, at *14–20 (N.C. Ct. App. Sept. 15, 2020) (unpublished) (recognizing, but ultimately dismissing on other grounds, a tortious interference with contract

claim asserted by an "intended beneficiary" to the contracts at issue).

44. However, such claims would exist, if at all, only where the claimant was an *intended* beneficiary of the contract rather than merely an *incidental* beneficiary.

45. As our Court of Appeals has explained:

A party is a direct beneficiary of a contract "if the contracting parties intended to confer a legally enforceable benefit on that person." *Hospira Inc. v. AlphaGary Corp.*, 194 N.C. App. 695, 703, 671 S.E.2d 7, 13, *disc. review denied*, 363 N.C. 581, 682 S.E.2d 210 (2009). . . . [I]n order to establish a claim based on the third-party beneficiary doctrine, a complainant must show: "(1) the existence of a contract between two other persons; (2) that the contract was valid and enforceable; and (3) that the contract was entered into for his direct, and not incidental, benefit." *Hoots v. Pryor*, 106 N.C. App. 397, 408, 417 S.E.2d 269, 276 (citation omitted), *disc. review denied*, 332 N.C. 345, 421 S.E.2d 148 (1992). Moreover, "[i]t is not enough that the contract . . . benefits the [third party], if, when the contract was made, the contracting parties did not intend it to benefit the [third party] directly." *Hospira*, 194 N.C. App. at 703, 671 S.E.2d at 13 (quotation marks omitted); *see also Snyder v. Freeman*, 300 N.C. 204, 220, 266 S.E.2d 593, 604 (1980) ("[T]he determining factor as to the rights of a third-party beneficiary is the intention of the parties who actually made the contract.").

*Davis & Taft Architecture, P.A. v. DDR-Shadowline, LLC*, 268 N.C. App. 327, 332 (2019).

46. Here, Defendants do not allege in their Amended Counterclaims that they were intended beneficiaries of the contracts for insurance between the policyholders and the insurance companies. Moreover, it would be illogical to suggest that a primary intent of the parties to those insurance contracts was to ensure that Defendants received a commission.

47. Under such circumstances, the receipt of a commission by Defendants would clearly be a mere incidental benefit.

48. Accordingly, because Defendants have failed to satisfy this basic element of the claim, TAG's Motion to Dismiss as to Defendants' cause of action for tortious interference with contract is **GRANTED**, and this counterclaim is **DISMISSED with prejudice**.

B.     **Defamation**

49. Next, Defendants contend that TAG's agents made disparaging statements about them to policyholders and that in doing so TAG and Ed Shackelford are liable under a theory of slander *per se*.

50. "In order to recover for defamation, a plaintiff must allege and prove that the defendant made false, defamatory statements of or concerning the plaintiff, which were published to a third person, causing injury to the plaintiff's reputation." *Taube v. Hooper*, 270 N.C. App. 604, 608 (2020) (cleaned up).

51. "Slander *per se* is an oral communication to a third party which amounts to (1) an accusation that the plaintiff committed a crime involving moral turpitude; (2) an allegation that impeaches the plaintiff in his trade, business, or profession; or (3) an imputation that the plaintiff has a loathsome disease." *Boyce & Isley, PLLC v. Cooper*, 153 N.C. App. 25, 29–30 (2002) (cleaned up).

52. "Claims for defamation are subject to heightened pleading requirements." *Addison Whitney, LLC v. Cashion*, 2017 NCBC LEXIS 111, at *15 (N.C. Super. Ct. Dec. 1, 2017). "The claimant must recite the defamatory statement verbatim or with sufficient particularity to enable the court to determine whether the statement was defamatory." *Id.* (cleaned up). In addition, the claimant "must state

the time and place of the alleged defamatory communication." *Id.* (cleaned up).

53.     Here, Defendants are relying on the second prong of the slander *per se* definition—that is, a statement that impeaches one in his or her trade, business, or profession.

54.     The specific allegations relating to this claim in Defendants' Amended Counterclaims state as follows:

> Upon information and belief, Third-Party Defendant Ed Shackelford instructed and approved TAG agents to make misrepresentations about EPIC brokers. These misrepresentations included statements that the agents were "no longer working" as insurance agents and/or had left the industry and/or the area under clouded circumstances. The intentional misrepresentations were made by TAG agents while they were performing their job duties for TAG.
>
> . . .
>
> Upon information and belief, TAG agents have told beneficiaries that Third-Party Plaintiffs and other current EPIC agents have left the insurance business and/or that Third-Party Plaintiffs are in legal trouble.
>
> . . .
>
> Upon information and belief, Third-Party Defendants instructed, authorized, and/or ratified the conduct of the TAG agents in stating that the EPIC agents (including individual Third-Party Plaintiffs) were no longer in the insurance business, had legal troubles, or could no longer serve as agents for them.
>
> Such statements falsely imputed illegal or unethical conduct to EPIC agents, harming their professional reputations and defaming them with respect to their trade, business, or profession.
>
> Such statements were false and were made by TAG agents in the performance of their job duties.
>
> Third-Party Plaintiffs have been damaged by such false statements by a loss of business and revenue, and damage to their reputations.

(Am. Countercls. ¶¶ 19, 21, 31–34.)

55. These allegations do not come close to meeting the specificity requirements set out above. The only specific person within TAG who is expressly mentioned is Ed Shackelford, and there are no allegations as to when and where each specific statement was made or the specific persons to whom they were made.

56. Furthermore, the nature of the alleged statements fails to meet the threshold established under our case law for impeaching one in his or her profession for purposes of a slander *per se* claim. *See, e.g.*, *Stutts v. Duke Power Co.*, 47 N.C. App. 76, 82 (1980) ("North Carolina cases have held consistently that alleged false statements made by defendants, calling plaintiff 'dishonest' or charging that plaintiff was untruthful and an unreliable employee, are not actionable per se." (cleaned up)); *Greensboro Scuba Sch., LLC v. Robertson*, 2015 N.C. App. LEXIS 595, at *9 (N.C. Ct. App. July 21, 2015) (unpublished) (finding statements advising someone "to be careful" working with the plaintiff and that the plaintiff "ha[d] been banned from the rock quarry" failed to satisfy the specificity standard for a slander *per se* claim).

57. Therefore, TAG's Motion to Dismiss Defendants' counterclaim for defamation is **GRANTED**, and this claim is **DISMISSED with prejudice**.

## C. UDTP

58. To establish a prima facie claim for UDTP, a plaintiff must show: "(1) [the] defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Gen. Fid. Ins. v. WFT, Inc.*, 269 N.C. App. 181, 191 (2020) (cleaned up).

59. To the extent that Defendants' UDTP counterclaim is based on the predicate claims of tortious interference with contract or defamation, the Court has dismissed those claims such that they cannot serve as the basis for the UDTP counterclaim.

60. Although Defendants argue that they have also alleged an independent claim for UDTP, the Court disagrees.

61. A careful reading of the Amended Counterclaims reveals that the acts Defendants contend were unfair or deceptive virtually all relate to the causes of action discussed above that the Court has found to be legally defective.

62. North Carolina courts have made clear that where allegations supporting a UDTP claim are identical to those supporting other claims that have been found to be deficient, the UDTP claim cannot survive. *See Azure Dolphin, LLC v. Barton*, 371 N.C. 579, 602–03 (2018) (affirming dismissal of a UDTP claim where the plaintiff alleged that the defendants' "conduct described herein and throughout this complaint, including its numerous instances of fraud, constructive fraud, and fraud by omission, has a tendency to deceive, is immoral, unethical, oppressive, and unscrupulous" because the court had already dismissed the plaintiff's fraud claims); *Krawiec*, 370 N.C. at 613 ("Plaintiffs made no further allegations of specific unfair or deceptive acts. Because we determined that plaintiffs failed to state a valid claim for tortious interference with contract or misappropriation of trade secrets, we necessarily must conclude that plaintiffs also failed to adequately allege that the Metropolitan defendants committed an unfair or deceptive act or practice." (cleaned

up)).

63.     The only additional allegation in Defendants' Amended Counterclaims in support of their UDTP claim is the statement that

> [a]dditionally upon information and belief, TAG received Medicare Marketing funds and used that money to purchase Final Expense (FE) insurance leads instead [of] spending it on Medicare marketing, in violation of CMS regulations and guidelines, as well as its contracts with Medicare carreirs [sic].
>
> Upon information and belief, the misconduct complained of was engaged in with the specific intent to injure the Third-Party business EPIC.

(Am. Countercls. ¶¶ 36–37.)

64.     It is not entirely clear how this allegation can be construed as describing unfair or deceptive conduct against Defendants for purposes of a UDTP claim.

65.     Moreover, Defendants' allegations of injury to EPIC as a result of such conduct are simply too conclusory and attenuated to support a UDTP claim.

66.     Accordingly, TAG's Motion to Dismiss as to Defendants' counterclaim for UDTP is **GRANTED**, and that counterclaim is **DISMISSED with prejudice**.

**D.     North Carolina Wage and Hour Act Claim Against Ed Shackelford**

67.     Finally, TAG seeks dismissal of Defendants' Wage and Hour Act ("NCWHA") claim against Ed Shackelford based on its argument that he is not a proper defendant to such a claim.

68.     The NCWHA provides for recovery of an employee's unpaid wages from an "employer." N.C.G.S. § 95-25.22(a). An "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee."

N.C.G.S. § 95-25.2(5).

69. Our Court of Appeals has explained the test to be used for determining when individual liability under the NCWHA is proper.

> To decide whether an individual is an "employer" for purposes of NCWHA . . . liability, courts apply an "economic reality" test. This test examines the totality of the circumstances to determine whether the individual has sufficient operational control over the workers in question and the allegedly violative actions to be held liable for unpaid wages or other damages.

> Factors commonly relied on by courts in determining the extent of an individual's operational control over employees include whether the individual: (1) had the power to hire and fire the employees; (2) supervised and controlled employee work schedules or conditions of employment; (3) determined the rate and method of payment; and (4) maintained employment records.

*Powell v. P2Enterprises, LLC*, 247 N.C. App. 731, 734–35 (2016) (cleaned up).

70. However, "[t]hese factors are not exclusive nor is any one factor dispositive." *Id.* at 735. "Rather, the determination of whether a particular individual had sufficient operational control within a business enterprise to be considered an 'employer' . . . requires a consideration of all of the circumstances and relevant evidence." *Id.* (cleaned up).

71. The pertinent allegations made by Defendants on this issue are as follows:

> Upon information and belief, Third-Party Defendant Ed Shackelford made the decisions not to pay Third-Party Plaintiffs their earned compensation.

> Third-Party Defendants are subject to the requirements of the North Carolina Wage and Hour Act (NCWHA), N.C. GEN. STAT. § 95-25.1 *et seq.*, in regard to all employees working in North Carolina, and one or more of the Defendants [sic] were "employers" of Third-Party Plaintiffs

D. Shackelford and B. Passe pursuant to N.C. GEN. STAT. § 95-25-2(5), including but not limited to individual Third-Party Defendant Ed Shackelford, who was the individual who made the decision not to pay any amounts to Third-Party Plaintiffs after they resigned.

(Am. Countercls. ¶¶ 47–48.)

72. Although these allegations against Ed Shackelford are bare-bones, the Court must accept them as true under the Rule 12(b)(6) standard. As a result, when read in conjunction with Defendants' other allegations regarding the alleged withholding of their commissions, bonuses, and other wages, these contentions are sufficient to state a valid claim for individual liability under the NCWHA against Ed Shackelford.

73. Therefore, TAG's Motion to Dismiss is **DENIED** as to Defendants' counterclaim for violation of the NCWHA against Ed Shackelford.

## CONCLUSION

**THEREFORE**, the Court hereby **ORDERS** as follows:

a. The Motion to Strike is **DENIED**.

b. The Motion to Dismiss is **GRANTED** with respect to Defendants' counterclaims for tortious interference with contract and prospective economic advantage, defamation, and UDTP, and those claims are **DISMISSED with prejudice**.

c. The Motion to Dismiss is **DENIED** with respect to Defendants' counterclaim for violation of the NCWHA against Ed Shackelford.

**SO ORDERED**, this the 17th day of March 2026.

/s/ Mark A. Davis
Mark A. Davis
Special Superior Court Judge for
Complex Business Cases