IN THE SUPREME COURT OF NORTH CAROLINA

No. 174A25

Filed 20 March 2026

JAMES R. TALLEY

v.

EARTH FARE 2020, INC. and DENNIS HULSING

Appeal pursuant to N.C.G.S. § 7A-27(a)(2) from an order and opinion on post-trial motions entered on 12 December 2024 by Judge Michael L. Robinson, Special Superior Court Judge for Complex Business Cases, in Superior Court, Buncombe County, after the case was designated a mandatory complex business case by the Chief Justice pursuant to N.C.G.S. § 7A-45.4(a). Heard in the Supreme Court on 17 February 2026.

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Agustin Martinez, Robert J. King III, and Daniel L. Colston, for plaintiff-appellee/cross-appellant.*

*Hall Booth Smith, P.C., by Michael R. Cline and Adam F. Peoples, for defendant-appellants/cross-appellees.*

PER CURIAM.

AFFIRMED.[1]

---

[1] The order and opinion of the North Carolina Business Court, 2024 NCBC 81, is available at https://www.nccourts.gov/assets/documents/opinions/2024%20NCBC%2081.pdf?VersionId=lBLbI3kd1OI4fJl0dX4dqfqgQCUTteqj.

Justice DIETZ concurring.

I would prefer for this Court to issue reasoned opinions when there are dissents, rather than per curiam decisions. But we occasionally do the latter. Here, I interpret the Court's per curiam affirmance as confirmation that the business court's order and opinion is "highly fact-bound and involved the application of settled law from this Court to the evidence presented in the case." *Vanguard Pai Lung, LLC v. Moody*, 387 N.C. 376, 384 (2025). In this circumstance, we have declined to write our own opinion because "repeating that court's analysis would not meaningfully add to our jurisprudence on these issues." *Id.* at 385.

My dissenting colleagues rather strongly disagree about this, so I want to make some observations. First, a Wage and Hour Act claim requires evidence that the plaintiff was *employed* to do the claimed work. *See Horack v. S. Real Est. Co. of Charlotte*, 150 N.C. App. 305, 309 (2002). This principle is the heart of the case. Plaintiff James Talley had a $50,000 salaried position at Earth Fare. Then, something changed. Talley went to his employer with a proposal—a new "deal" as he described it, not a request for a promotion or an expansion of his current job and salary. Talley proposed raising capital for the business in exchange for a significant equity stake in the company, a seat on the board of directors, an ownership interest for his son, and other perks that the company offered to its outside business partners.

The dissent points out that "Earth Fare promised and paid at least two *people* stock compensation" for doing similar work securing investors for the business. (Emphasis added.) This, the dissent believes, is evidence that Earth Fare employed Talley to do this work. But the "people" referenced by the dissent are not employees. They are real estate developers who owned one of the shopping centers where Earth Fare opened a retail location. Those two businessmen agreed to help Earth Fare obtain financing for its expansion plans in exchange for an ownership stake in the company, as well as a commitment to bring an Earth Fare location to their commercial property.

One does not need to be an employment law expert to know that if Earth Fare reneged on that deal, those wealthy developers could not bring Wage and Hour Act claims. They are not "employed" by Earth Fare. *See* N.C.G.S. § 95-25.2(4) (2025); *Laborers' Int'l Union of N. Am. v. Case Farms, Inc.*, 127 N.C. App. 312, 314 (1997). The same is true of any other outside contractor, consultant, or business partner who provides these types of independent services to the company.

This is where the dissent misunderstands the realities of business relationships. It has this rudimentary take on private enterprise where all that exists is some eternal struggle between labor and management. But there is so much more to the private sector. In the modern economy, employees in an emerging business like Earth Fare are free to be enterprising; to be entrepreneurial. They can watch their employer make lucrative deals with outside business partners and then make an

independent pitch to do that same type of work and get that same kind of deal—all while keeping their current, salaried position.

That is what the evidence showed in this case. Talley's own testimony confirmed that he never proposed expanding his existing salaried role as an employee of the company. He proposed a new "deal," as he called it, entirely independent of his existing employment. He wanted to be like those real estate developers. He, too, wanted to secure investors in exchange for things like an equity stake, a seat on the board of directors, and various other perks that Earth Fare extended to its key investors and business partners.

Thus, nothing in the business court's decision suggests that a written employment contract is required for a Wage and Hour Act claim. Instead, the business court's straightforward ruling is that the Wage and Hour Act claim required evidence that Talley was *employed* by Earth Fare to do this particular work. *See Horack*, 150 N.C. App. at 309. The business court reasoned that, because no employee had ever done this type of work before, absent evidence that Earth Fare *employed* Talley to do it, he was no different than those real estate developers—a sophisticated businessman offering to provide independent services far outside the role of any employee at the company. *Talley v. Earth Fare 2020, Inc.*, 2024 NCBC 81, ¶¶ 58–59.

The court instructed the jury to first determine if there was ever a meeting of the minds about employing Talley to do this work. *Id.* If the jury determined there was not, it was told not to consider the Wage and Hour Act claim. *Id.* ¶ 59. Instead,

just like those other businessmen, if Talley independently performed these services but failed to enter into an enforceable contract, his recourse was a claim for unjust enrichment. That is precisely what the trial court instructed the jury in this case. And it is worth noting that the jury sided with Talley on that unjust enrichment claim; he received a six-figure jury award. *Id.* ¶¶ 32–34.

Finally, the dissent contends that my reasoning conflicts with our decision in *Morris v. Scenera Rsch., LLC*, 368 N.C. 857 (2016). Not so. *Morris* was a case about bonuses owed under an employee bonus program for filing successful patent applications. The legal question was whether plaintiff, who was "hired to invent," was entitled to bonuses for patents that were approved after he left the job. *Id.* at 860–62. Importantly, no one in that case disputed that the plaintiff was employed to do that patent work, which meant the Wage and Hour Act applied. *Id.* at 859–60.

Here, by contrast, the central question is whether Talley was employed to do the work to begin with. Beyond Talley's testimony about the deal he thought he had with Earth Fare, there was no evidence that Earth Fare employed Talley to do this particular work. The business court sent that issue to the jury, and the jury found that Earth Fare did not agree to Talley's terms.

Were the dissent correct in its view of the law here, employees could go to their employer and ask to take on additional work in exchange for equity in the business. When the employer says no, those employees could simply do the work anyway and demand to become part-owners of the company through the Wage and Hour Act.

The act does not permit this sort of shakedown. The Wage and Hour Act applies only if one is *employed* to do the work. *See* N.C.G.S. §§ 95-25.2(4), 95-25.22(a), 95-25.6. If a business does *not* agree to employ someone to do a job, that person cannot go out, do the job anyway, and then insist that the law made them an employee.

This is where the dissent seems to struggle most. It fixates on the idea that, under the Wage and Hour Act, one can be an "employee" even without an express employment agreement, and that one can be paid "wages" that include more than money, such as stock options. This is all true. No one in this case claims otherwise.

But all that has nothing to do with the question presented in this case. To recover under the act, one must be "employed." *See* N.C.G.S. § 95-25.2(3)–(5); *Horack*, 150 N.C. App. at 309. That has always been the heart of this case—what evidence does Talley have that he did this work *as an employee*, rather than independently like the investors and business partners with similar deals? The business court properly determined that Talley's only evidence was the negotiations around the new "deal" he thought he had reached with Earth Fare, which was separate from his existing salaried employment. Because the jury found that Earth Fare did not agree to Talley's terms, the court properly instructed them not to consider the Wage and Hour Act claim. Instead, Talley's recovery for his independent work was limited to a common law claim for unjust enrichment. This basic principle of the Wage and Hour Act is not the least bit unsettled or complicated, and it is why I believe this Court chose to summarily affirm the business court's judgment.

Justice RIGGS concurring in part and dissenting in part.

While I agree with the Business Court's decision with respect to the breach of contract claim, I cannot agree with its analysis regarding the North Carolina Wage and Hour Act (WHA), and this Court does a disservice to an underdeveloped area of law by affirming without opinion that portion of the decision below. The text of the WHA does not explicitly require an underlying contract for a plaintiff to bring a claim for unpaid wages. Here, though, the Business Court directed the jury that it could not reach plaintiff James Talley's WHA claim without first finding an enforceable contract. In doing so, the Business Court inserted a requirement into the WHA that does not plainly exist in the text and created a conflict with *Morris v. Scenera Research, LLC*, 368 N.C. 857 (2016). Therefore, the Business Court committed legal error by instructing the jury that it could not reach Mr. Talley's WHA claim if it found that he did not have an enforceable contract with the defendants. Because the jury should have been able to decide whether Mr. Talley was entitled to unpaid compensation under the WHA, I would have held that the Business Court erred in denying Mr. Talley's motion for a new trial on his WHA claim.[1]

---

[1] Unlike other Rule 59 motions, which are reviewed for abuse of discretion, we review motions for a new trial under Rule 59(a)(8), which are based on "[e]rror in law occurring at the trial and objected to by the party making the motion," de novo. *See* N.C.G.S. § 1A-1, Rule 59(a)(8) (2025); *Bryant v. Nationwide Mut. Fire Ins. Co.*, 313 N.C. 362, 378–82 (1985) (discussing the difference between "fully reviewable" Rule 59(a)(8) motions and other Rule 59 motions); *Chiltoski v. Drum*, 121 N.C. App. 161, 164 (1995) ("While an order for new trial pursuant to Rule 59 which satisfies the procedural requirements of the Rule may ordinarily

The WHA governs various provisions of North Carolina's employment law, including minimum wage, overtime, wage payment, and child labor. *See* N.C.G.S. §§ 95-25.1–.25 (2025). The WHA reflects the legislature's concern with "[t]he wage levels of employees, hours of labor, payment of earned wages, and the well-being of minors." N.C.G.S. § 95-25.1(b). Like the federal Fair Labor Standards Act (FLSA), the purpose of the WHA is to promote the general welfare by enforcing employment protections for employees. *See* 29 U.S.C. § 202(a); N.C.G.S. § 95-25.1(b). The WHA establishes a private cause of action permitting employees to recover unpaid wages. N.C.G.S. § 95-25.22(a) ("Any employer who violates the provisions of . . . G.S. 95-25.6 through 95-25.12 (Wage Payment) shall be liable to the employee or employees affected in the amount of . . . their unpaid amounts due under G.S. 95-25.6 through 95-25.12 . . . .").

Mr. Talley brought a WHA claim, alleging that defendants Dennis Hulsing and Earth Fare 2020, Inc. (Earth Fare) violated sections 95-25.6 and 95-25.7 of the WHA by failing to pay him the promised stock, stock options, and other compensation owed for his work raising money for Earth Fare. At trial, the jury was instructed that if it found no contract existed between Mr. Talley and defendants, it should not consider his WHA claim. Mr. Talley objected to the instruction, arguing that WHA claims are legally distinct from breach of contract claims, so the jury should be entitled to

be reversed on appeal only in the event of 'a manifest abuse of discretion,' when the trial court grants or denies a new trial 'due to some error of law,' then its decision is fully reviewable." (quoting *Garrison v. Garrison*, 87 N.C. App. 591, 594 (1987))).

consider both independently.

On 25 July 2024, the jury returned a verdict finding that Mr. Talley did not enter into a contract with Mr. Hulsing or Earth Fare, and therefore, it did not reach his WHA claims. The jury found that Mr. Hulsing was unjustly enriched by Mr. Talley and returned a verdict for recovery of $195,000. Following the verdict, Mr. Talley moved for judgment notwithstanding the verdict (JNOV) on his WHA claims or, in the alternative, a new trial. The court denied the motions, and Mr. Talley filed a notice of appeal.

In North Carolina, "[e]very employer shall pay every employee all wages . . . accruing to the employee on the regular payday." N.C.G.S. § 95-25.6. If wages are "based upon bonuses, commissions, or other forms of calculation," they "may be paid as infrequently as annually if prescribed in advance." *Id.* The WHA defines "wage" as "compensation for labor or services rendered by an employee whether determined on a time, task, piece, job, day, commission, or other basis of calculation." N.C.G.S. § 95-25.2(16). As related to the unpaid compensation sections of the WHA, " 'wage' includes . . . commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." *Id.*

The text of the WHA does not explicitly require a contract. The very definition of wages in the WHA presupposes that there may not be an underlying employment contract. If bonuses can constitute wages when they are "promised when the employer has a policy or a practice of making such payments," *id.*, then the WHA does

not require a contract defining the payment of such bonus. A "promise" does not necessarily require contract formalities, such as mutual assent or consideration. Instead, a jury could find a "promise," for example, where an employer tells an employee that it will pay a bonus for work already completed, and the employee never accepts the employer's offer. This example would not meet contract formalities, but it could constitute a "promise" under the WHA sufficient to support a claim for unpaid wages. We presume that the legislature carefully chose each word, and we do not "add to or subtract from the language of the statute." *Ferguson v. Riddle*, 233 N.C. 54, 57 (1950); *see also N.C. Dep't of Corr. v. N.C. Med. Bd.*, 363 N.C. 189, 201 (2009). If the legislature wanted to require claimants to prove an underlying contract, then it could have written the WHA to require a contract instead of a "promise." Because it did not do so, we cannot read into the statute an extra requirement that the legislature did not clearly intend.

Further, if an employee is terminated for any reason but is owed wages "based on bonuses, commissions or other forms of calculation," those wages "shall be paid on the first regular payday after the amount becomes calculable when a separation occurs." N.C.G.S. § 95-25.7. The fact that a wage need not be calculable at the time of termination indicates that a plaintiff may bring an unpaid compensation claim even if they do not have an enforceable contract defining specific wages.

The WHA was passed in 1979 to amend and consolidate four laws dealing with maximum hours, minimum wage, wage payment, and child labor. Wage and Hour

Act, ch. 839, § 1, 1979 N.C. Sess. Laws 1157, 1157–65. It was modeled after the FLSA, which was enacted to address "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a); *see also Powell v. P2Enterprises, LLC*, 247 N.C. App. 731, 733–34 (2016); *Hyman v. Efficiency, Inc.*, 167 N.C. App. 134, 137 (2004); *Laborers' Int'l Union of N. Am. v. Case Farms, Inc.*, 127 N.C. App. 312, 314 (1997). The Court of Appeals has recognized that "the policy of the Wage and Hour Act is to 'protect[ ] those who, as a matter of economic reality, are dependent upon the business to which they render service.' " *Laborers' Int'l Union*, 127 N.C. App. at 314 (alteration in original) (quoting *Poole v. Loc. 305 Nat'l Post Off. Mail Handlers*, 69 N.C. App. 675, 678 (1984)). As a worker-protective statute, the WHA should not be used as a sword against employees who may, through no fault of their own, lack a formal employment contract. Nothing in the text of the WHA requires an underlying employment contract, and we should not read such a requirement into the statute.

Though it has not said so explicitly, this Court has implied that an enforceable contract is not necessary for a WHA claim. *See Morris*, 368 N.C. at 859, 862. In *Morris*, plaintiff Robert Morris sued his employer under the WHA to recover compensation for bonuses he alleged he was owed under the company's patent bonus program. *Id.* at 859. Mr. Morris did not have an employment contract with his employer, though they held multiple discussions regarding the details of his employment. *Id.* He threatened to sue under the WHA because he was "[f]rustrated

with [the] lack of progress" towards a compensation agreement. *Id.* at 860. Later, when he was terminated, Mr. Morris brought several claims, including claims for breach of contract and unpaid wages under the WHA. *Id.* Mr. Morris prevailed only on his WHA and Retaliatory Employment Discrimination Act (REDA) claims, not his breach of contract claim. *Id.*

Despite his inability to prove his breach of contract claim, the trial court nonetheless permitted Mr. Morris to litigate his WHA claim.[2] *Id.* Mr. Morris's testimony demonstrated that his employer had a policy or practice of providing patent bonuses because he and other employees had "unique bonus plan[s]" that were earned when they filed patent applications. *Id.* at 862. The jury was instructed on the WHA claim, even though there was no underlying contract, and found for Mr. Morris on that claim. *Id.* at 860. This Court affirmed the Court of Appeals' judgment affirming the trial court's ruling and held that Mr. Morris met his burden under the JNOV standard. *Id.* at 862. Even though Mr. Morris failed on his breach of contract claim, this Court upheld the jury's verdict granting him unpaid compensation under the WHA. *Id.*

*Morris* impliedly supports Mr. Talley's argument that the trial court erred as

---

[2] While the concurrence rightly points out that Mr. Morris was employed to perform patent work, it ignores that the employment relationship existed without an underlying contract, and the jury still reached Mr. Morris's WHA claim (and found in his favor) even though his breach of contract claim failed. The present case conflicts with *Morris* because it ignores *Morris*'s rule that the jury can reach a WHA claim even in the absence of an underlying contract and affirms the Business Court's legal error prohibiting the jury from reaching exactly such a claim here.

a matter of law by instructing the jury that it had to find an enforceable contract before it could reach the WHA claim. But this important statute requires more careful treatment to clarify its reach, particularly given that the Court of Appeals and North Carolina's federal courts seem to disagree on how to apply the WHA.

In dicta in *Kornegay v. Aspen Asset Group, LLC*, 204 N.C. App. 213 (2010), the Court of Appeals speculated that "[i]f there were no enforceable contract regarding payment of a bonus, then defendants would have no obligations under the [ ]WHA with respect to a bonus." *Id.* at 245; *see also id.* at 245–46 (discussing the trial court's decision not to award liquidated damages under the WHA given that the case "hinge[d] entirely on the legal effect of initial negotiations between [the] plaintiff and [the defendant]" and the defendants believed in good faith that there was not a contract). But this cursory treatment by the Court of Appeals fails to provide any explanation for why it would read the plain language of the WHA to impose a greater burden of proof on a claimant, particularly where the General Assembly explicitly created an unusual basis for relief: promises based on past practices and procedures of the employer. Under contract law, such consideration would not be sufficient to satisfy all the elements of an enforceable contract. *Jones v. Winstead*, 186 N.C. 536, 540–41 (1923); *see also Penley v. Penley*, 314 N.C. 1, 18 (1985) (describing the "general rule" that past services do not "supply[ ] the consideration necessary to support a subsequent promise").

Although not binding on us, North Carolina's federal district courts have

regularly found that contracts are not required to obligate employers to pay unpaid wages under the WHA. In a case dealing with the definition of "work" under the WHA, the court found that the WHA requires "an employment relationship" but "the statute contains no requirement of an express contract or agreement to pay for particular work." *Martinez-Hernandez v. Butterball, LLC*, 578 F. Supp. 2d 816, 821 (E.D.N.C. 2008). Similarly, in unpublished cases, North Carolina's federal district courts affirmed that the WHA does not require an express contract. *Vinson v. Int'l Bus. Machs. Corp.*, No. 1:17-CV-00798, 2018 WL 4608250, at *8 (M.D.N.C. Sep. 25, 2018) ("To state a claim under [the WHA], there need not be an enforceable agreement, provided the employer has a policy or practice of making such payments." (cleaned up)); *Buckner v. United Parcel Serv., Inc.*, No. 5:09-CV-411-BR, 2010 WL 2889586, at *3 (E.D.N.C. July 21, 2010) (reasoning a violation of N.C.G.S. § 95-25.6 "need not be based upon an express contract"), *aff'd*, 489 F. App'x 709 (4th Cir. 2012).

Much of the language of the WHA is modeled after the FLSA, and "in interpreting the [ ]WHA, North Carolina courts look to the FLSA for guidance." *Powell*, 247 N.C. App. at 734 (cleaned up). The Court of Appeals has recognized the FLSA creates a compensable claim for unpaid overtime even when "the trial court f[inds] that there [is] no 'written or oral agreement' between the parties 'as to compensation of the contested hours.'" *Lowe v. Bell House, Inc.*, 74 N.C. App. 196, 199 (1985). In that case, even though there was no contract determining the plaintiff's wages during on-call shifts, the Court of Appeals affirmed the trial court's

finding that the on-call time was compensable and remanded for findings of fact regarding the plaintiff's rate of pay, status as an hourly or salaried employee, and the number of hours subject to overtime compensation. *Id.* at 201. The lack of an underlying contract did not bar the plaintiff's recovery under the FLSA. *See id.*

Similarly, the Fourth Circuit has reasoned that "[f]or purposes of FLSA claims, there does not 'need[ ] to be any written contract, state law, regulation or statute, [or] collective bargaining agreement' if the terms of the agreement are 'obvious' from the 'employment policies, practices, and procedures' of the employer or 'the parties' conduct.' " *Conner v. Cleveland County*, 22 F.4th 412, 427 (4th Cir. 2022) (second and third alterations in original) (quoting *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1275 (4th Cir. 1996)). Neither the Court of Appeals nor the Fourth Circuit require an enforceable contract for plaintiffs to bring FLSA claims.[3] Our courts should not read a requirement for an enforceable contract into the WHA's statutory language, especially given the statutes' shared "remedial and humanitarian . . . purpose." *Tenn. Coal, Iron & R.R. Co. v. Muscoda Loc. No. 123*, 321 U.S. 590, 597 (1944), *superseded on other grounds by statute*, 29 U.S.C. § 251(a), *as recognized in*,

---

[3] The FLSA does not have a private cause of action for unpaid compensation, but the WHA does. *Conner v. Cleveland County*, 22 F.4th 412, 421 (4th Cir. 2022). Because the FLSA does not have a cause of action for unpaid compensation not related to minimum wage or overtime compensation violations, the FLSA is not the proper vehicle for claims where "an employee has worked no overtime and has been paid at least minimum wage for all hours worked." *Monahan v. County of Chesterfield*, 95 F.3d 1263, 1265 (1996). Instead, a "pure gap time" compensation claim is " 'enforceable only under' state law related to the parties' employment agreement." *Conner*, 22 F.4th at 421 (quoting *Monahan*, 95 F.3d at 1283).

*Integrity Staffing Sols., Inc. v. Busk*, 574 U.S. 27 (2014); *see Brown v. Caruso Homes, Inc.*, 294 N.C. App. 9, 13 (2024) (denial of plaintiff's request for attorney's fees was insufficient to show trial court "ignored the remedial nature of the [ ]WHA").

While I agree with most of the Business Court's conclusions, this Court should have engaged more meaningfully with Mr. Talley's WHA claim. Mr. Talley testified that as his role with Earth Fare developed, he was promised additional compensation, including for his work securing capital investments for Earth Fare. Mr. Talley further testified that his work was instrumental in securing a deal with Dan Larimer (the Larimer deal). Trial testimony from both Mr. Talley and Mr. Hulsing indicates that Earth Fare promised and paid at least two people stock compensation for their work securing the Larimer deal. This was the evidence that was presented to the jury and the jury was not allowed to weigh this evidence in deciding Mr. Talley's WHA claim. The payments to the two other people involved in the Larimer deal could have indicated that Earth Fare had "a policy or a practice" of "making such payments" in stock for work on the Larimer deal. Therefore, had it not been erroneously prohibited from reaching the issue, the jury could have decided that the stock, stock options, and other compensation Mr. Talley was promised was a "wage" under N.C.G.S. § 95-25.2(16) subject to a WHA unpaid compensation claim.[4] Mr. Talley did not need to

---

[4] Arguably, the concurrence reads a requirement into N.C.G.S. § 95-25.2(16) that does not exist. Section 95-25.2(16)'s definition of "wage" does not require that an employer have "a policy or a practice" of paying bonuses or commissions to *employees*, only that they have "a policy or a practice of making such payments." N.C.G.S. § 95-25.2(16). It is beyond the scope of this Court to add or change statutory language. *Ferguson*, 233 N.C. at 57. Moreover, this

point to an enforceable contract if he could demonstrate that Earth Fare had "a policy or a practice" of paying other people similar compensation for similar work, particularly when it appears that Mr. Talley did more investor solicitation work than the people who received stock compensation.[5]  That factual question, including how to weigh the trial evidence, should have been submitted to the jury.  *See Cauble v. Bell*, 249 N.C. 722, 724 (1959) (citations omitted) ("Issues of fact must be determined by a jury unless such trial is waived.").

It is far from clear from the statute, our precedent, and persuasive caselaw that the WHA requires an underlying contract to support an unpaid compensation claim—indeed, I would conclude to the contrary.  Like my concurring colleague, I would prefer that this Court issue reasoned opinions, as opposed to per curiam opinions, when there are dissents.  Instead, today's per curiam affirmance of a Business Court decision that conflicts with a prior case from this Court only invites

---

was not the basis of the Business Court's decision—the lack of an enforceable contract was the basis. *Talley v. Earth Fare 2020, Inc.*, 2024 NCBC 81 ¶¶ 57–59, 64–65.  And we affirmed that basis without any clarity or resolution of the conflict with *Morris*.  The jury should have been permitted to determine whether the payments to the two people involved in the Larimer deal sufficiently established "a policy or a practice of making such payments" to support Mr. Talley's WHA claim.

[5] I disagree with my concurring colleague that permitting juries to hear WHA claims even in the absence of an underlying contract will lead to "shakedowns" from employees seeking additional work.  This hypothetical is hyperbolic and it misreads the statutory definition of "wage," which expressly permits promised compensation if an employer has "a policy or a practice of making such payments."  N.C.G.S. § 95-25.2(16).  Employees seeking compensation for work for which their employer has demonstrated "a policy or a practice" of compensating others are not committing a "shakedown;" they are seeking a wage as defined in the WHA.

further confusion around the law (and likely harm to workers in North Carolina). The jury should have been permitted to reach Mr. Talley's claim for unpaid wages. Given the stated purpose of the WHA and the fact that our limited precedent suggests a worker-protective interpretation of the statute, I would have held that the trial court erred as a matter of law by requiring the jury to first find an enforceable contract. Therefore, it was error to deny Mr. Talley's motion for a new trial. To prevent double recovery upon a new trial, I would have also vacated the Business Court's decision regarding Mr. Talley's unjust enrichment claim and remanded the case. On these grounds, I respectfully dissent in part.

Justice EARLS joins in this concurring in part and dissenting in part opinion.